IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30258-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TONY ORLANDO CANTU, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J. — Tony Orlando Cantu appeals his convictions for possessing a stolen

motor vehicle, first degree criminal trespass, and first degree unlawful possession of a

firearm. He contends the Adams County Superior Court erred in denying his mistrial

motion following a prospective juror's voir dire statement regarding Mr. Cantu's gang

affiliation. Specifically, he argues the trial court's ruling impaired his constitutional

rights to an impartial jury and to confrontation, and was an abuse of discretion. We

disagree, and affirm.

FACTS

Based on events occurring in Adams County in 2010, the State charged Mr. Cantu

with possessing a stolen motor vehicle, first degree criminal trespass, and first degree

unlawful possession of a firearm. During voir dire, the trial court asked prospective jurors to express any concerns regarding their abilities to remain impartial. Juror 30 responded, in the presence of the entire panel, "The Defendant is a rival gang member of friends of mine." Report of Proceedings (RP) at 53.

Mr. Cantu moved unsuccessfully for a mistrial. The trial court concluded the statement was not so prejudicial to Mr. Cantu as to require a mistrial because instructing the jury to decide solely upon the evidence admitted could ensure he received a fair trial, as the jury is presumed to follow such instruction. The court did not expressly instruct the jury to disregard the statement, agreeing with Mr. Cantu that doing so would unnecessarily emphasize it. Upon Mr. Cantu's request, the court dismissed juror 30 for cause and admonished him not to contact any panel member.

When voir dire resumed, defense counsel asked panel members if hearing the statement would affect their abilities to remain impartial. The first prospective juror to speak indicated the statement would not affect his ability to remain impartial because he needed to hear the evidence before he could "make a judgment on" whether Mr. Cantu was affiliated with a gang. RP at 174. The second juror agreed, but admitted *if* the evidence showed Mr. Cantu was affiliated with a gang, this knowledge would leave "a bad taste in [his] mouth" and "weigh on [him] a little bit" when evaluating guilt. RP at 175. The third juror responded, "I don't think it impacts whatsoever because [Mr. Cantu is] not being tried for being on a gang." RP at 176. The fourth juror responded, "I think

2

pertaining to this case it's irrelevant." RP at 176. Several other prospective jurors agreed with the final two responses.

The jury found Mr. Cantu guilty of each crime as charged. He appealed.

ANALYSIS

The issue is whether the trial court erred in denying Mr. Cantu's mistrial motion based on juror 30's voir dire statement. First, Mr. Cantu contends the trial court's ruling violated his right to an impartial jury. We review alleged constitutional violations de novo. *State v. Siers*, 174 Wn.2d 269, 274, 274 P.3d 358 (2012).

Both the federal and state constitutions provide a criminal defendant the right to trial by an impartial jury. U.S. CONST. amend. VI; CONST. art. I, § 22 (amend. 10). This requires that jurors remain "'indifferent,'" *Morgan v. Illinois*, 504 U.S. 719, 727, 112 S. Ct. 2222, 119 L. Ed. 2d 492 (1992) (construing U.S. CONST. amend. VI), or "unbiased and unprejudiced," *State v. Davis*, 141 Wn.2d 798, 824, 10 P.3d 977 (2000) (construing CONST. art. I, § 22 (amend. 10)). Because the trial court can observe and evaluate jurors' individual demeanors and responses, it is best suited to assess their impartiality. *State v. Noltie*, 116 Wn.2d 831, 839, 809 P.2d 190 (1991). However, if a prospective juror repeatedly makes highly inflammatory, expert-like statements directly concerning guilt in the presence of the entire panel, this court may presume the statements tainted the resulting jury's impartiality. *Mach v. Stewart*, 137 F.3d 630, 633 (9th Cir. 1997).

3

Relying on *Mach*, Mr. Cantu argues we should presume juror 30's voir dire statement infected the entire panel with bias or prejudice. In *Mach*, the government charged the defendant with making sexual contact with a minor. *Id.* at 631. During voir dire, a prospective juror stated, in the presence of the entire panel, that she had a psychology background, currently worked for the state child protective services agency, and had confirmed child sexual assault in every case where a client reported it. *Id.* at 631-32. Upon further questioning, the prospective juror repeated three times more how she never, in her three years as a social worker, found a case where a child lied about sexual assault. *Id.* at 632. The district court removed the prospective juror for cause upon the defendant's request. *Id.* The defendant moved for a mistrial, which the district court denied without inquiring into whether the statements affected the panel's impartiality. *Id.* at 632-33.

The *Mach* court reversed, holding the statements presumably infected the jury with bias or prejudice and, thus, the district court violated the defendant's constitutional right to an impartial jury by denying his mistrial motion. *Id.* at 633. In so holding, the court reasoned the statements were "highly inflammatory and directly connected to . . . guilt." *Id.* at 634. Further, the court found the statements had an "expert-like" quality based on the prospective juror's years of experience and degree of certainty. *Id.* at 633. Additionally, the court indicated the number of times the prospective juror repeated the statements created an especially high risk they would affect the jury's verdict. *Id.* Given

4

these facts and the lack of information regarding the statements' actual impact, the court "presume[d] that at least one juror was tainted and entered into jury deliberations with the conviction that children simply never lie about being sexually abused." *Id.*

*Mach* is distinguishable because it involved repeated, expert-like statements directly concerning guilt, *id.*, while our case involves an isolated, layperson's statement unconnected to any material issue. Further, *Mach* presumed the prospective juror's statements tainted the entire panel mainly because it lacked information regarding the statements' actual impact, *id.*, while in this case numerous panel members assured defense counsel the statement had no impact on their impartiality. Thus, *Mach* does not control the result here and we will not presume juror 30's voir dire statement tainted the entire panel.

Absent such a presumption, Mr. Cantu fails to show juror 30's voir dire statement caused jury bias or prejudice. The trial court correctly instructed the jury to decide solely upon the evidence admitted. "We presume that juries follow the instructions and consider only evidence that is properly before them." *State v. Perez-Valdez*, 172 Wn.2d 808, 818-19, 265 P.3d 853 (2011). Nothing suggests the jury did otherwise. Rather, the panel's assurances to defense counsel suggest the jury remained impartial. Thus, we conclude the trial court did not violate Mr. Cantu's right to an impartial jury by denying his mistrial motion.

5

Second, Mr. Cantu contends the trial court violated his federal confrontation right by denying his mistrial motion. He argues solely, "[T]here can be no question" it did. Br. of Appellant at 12. Our standard of review remains de novo.

The Sixth Amendment to the U.S. Constitution provides a criminal defendant the right to confront and cross-examine adverse witnesses. U.S. CONST. amend. VI. The federal Confrontation Clause renders testimonial, out-of-court statements inadmissible unless the declarant testifies at trial or the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 54-55, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). A juror becomes an "unsworn witness," triggering the federal Confrontation Clause, if he or she "communicates objective extrinsic facts regarding the defendant or the alleged crimes to other jurors." *Jeffries v. Wood*, 114 F.3d 1484, 1490 (9th Cir. 1997), *overruled on other grounds by Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012). But the defendant waives his or her federal confrontation right by failing to timely assert it at the trial court in accordance with applicable procedural rules. *State v. O'Cain*, 169 Wn. App. 228, 239-40, 279 P.3d 926 (2012) (analyzing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009)).

Mr. Cantu waived his federal confrontation right because he failed to assert it at the trial court.[1] Even so, the trial court did not violate Mr. Cantu's federal confrontation

---

[1] While Mr. Cantu does not assert his state confrontation right, he likely waived it as well because "[n]othing about [the state confrontation clause] lends credence to the

right by denying his mistrial motion because he had the opportunity to cross-examine juror 30 during voir dire but chose not to do so, instead requesting the trial court dismiss him for cause.

Third, Mr. Cantu contends the trial court abused its discretion when denying his mistrial motion. We review a denial of a mistrial motion for abuse of discretion, finding such abuse only if "'no reasonable judge would have reached the same conclusion.'" *State v. Emery*, 174 Wn.2d 741, 765, 278 P.3d 653 (2012) (quoting *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)).

A mistrial is proper if "the defendant has been so prejudiced that nothing short of a new trial can ensure that the defendant will be fairly tried." *Id.* (citing *Hopson*, 113 Wn.2d at 284). A trial irregularity prejudices a defendant's fair trial rights if it poses a "substantial likelihood" of affecting the jury's verdict. *State v. Gamble*, 168 Wn.2d 161, 177, 225 P.3d 973 (2010) (citing *State v. Greiff*, 141 Wn.2d 910, 921, 10 P.3d 390 (2000)). This analysis depends on "'(1) the seriousness of the irregularity, (2) whether the statement was cumulative of evidence properly admitted, and (3) whether the irregularity could be cured by an instruction.'" *Perez-Valdez*, 172 Wn.2d at 818 (quoting *State v. Post*, 118 Wn.2d 596, 620, 826 P.2d 172, 837 P.2d 599 (1992)).

Here, the trial court concluded juror 30's voir dire statement was not so prejudicial to Mr. Cantu as to require a mistrial because instructing the jury to decide solely upon the

---

notion that a defendant may choose not to confront the witness at trial and then seek a

evidence admitted could ensure he received a fair trial, as the jury is presumed to follow such instruction. We cannot say no reasonable judge would have reached the same conclusion. First, despite the inflammatory nature of gang affiliation, the statement was not very serious because it was not evidence, was isolated, and did not concern any matter relevant to the case. And, "'the trial judge is best suited to judge the prejudice of a statement.'" *Greiff*, 141 Wn.2d at 921 (quoting *State v. Weber*, 99 Wn.2d 158, 166, 659 P.2d 1102 (1983)). Second, the parties offered no testimony or exhibits regarding gang affiliation, so the statement was not cumulative of admitted evidence. Finally, the trial court correctly instructed the jury to decide solely upon the evidence admitted. We presume the jury followed the trial court's instructions and considered solely the evidence admitted at trial. *Perez-Valdez*, 172 Wn.2d at 818-19. Nothing suggests the jury did otherwise. Notably, during voir dire, numerous panel members assured defense counsel the statement had no impact on their impartiality.

In sum, a reasonable judge could conclude a proper jury instruction, not a new trial, was the appropriate remedy to ensure Mr. Cantu received a fair trial. It follows that the trial court did not abuse its discretion by denying Mr. Cantu's mistrial motion.

---

new trial based upon the absence of confrontation." *O'Cain*, 169 Wn. App. at 252.

No. 30258-0-III
*State v. Cantu*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Brown, J.

WE CONCUR:

_____    _____
Siddoway, A.C.J.                                       Kulik, J.